UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

FELIX DeJESUS,

                                   Plaintiff,

        vs.

OFFICER R. TIERNEY; BRANTLY;
OFFICER GRANSBURY; MANHARM                   9:04-CV-298
JULIE SUAREZ; FIELDER; MERCIS;                (J. Mordue)
E. ROTH; THOMAS EAGEN; OFFICER
M. SCHUER; MAYFORTHS; OFFICER,
F. PAMBIACHI; BROKE; JOHN DOE;
OFFICER K. SWEET; PEREZ; DIRIE;
GARY FILION; and DONALD SELSKY,

                                   Defendants.

_____

APPEARANCES                         OF COUNSEL

FELIX DeJESUS
Plaintiff pro se

ELIOT SPITZER                    STEPHEN KERWIN
New York State Attorney General      Asst. Attorney General
For DOCS Defendants

THUILLEZ, FORD LAW FIRM         DEBRA J. YOUNG, ESQ.
For Medical Personnel Defendants

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

    This matter has been referred to me for Report and Recommendation by the

Honorable Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C.

§ 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights action, plaintiff alleges that he was denied due process in conjunction with a disciplinary hearing held against him, and he was denied proper medical care.  Plaintiff also alleges that one of the defendants used excessive force against him.  Plaintiff seeks substantial monetary relief.

Presently before the court are two motions to dismiss this action pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. Nos. 63, 66).  One motion has been submitted on behalf of the corrections personnel defendants, represented by the New York State Attorney General's Office. (Dkt. No. 63).  The second motion has been submitted on behalf of the medical personnel defendants, represented by private counsel (Dkt. No. 66).  For the following reasons, this court agrees with defendants in part and will recommend dismissing almost all of the complaint.

## DISCUSSION

1. <u>**Motion to Dismiss**</u>

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994)(citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The court must accept the material facts alleged in the complaint as true. *Id.* (citing *Cooper v. Pate*, 378 U.S. 546 (1964)(per curiam)).  In determining whether a complaint states a cause of action, ***great liberality*** is afforded to *pro se* litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)(citation omitted).  When considering a motion to dismiss for failure to state a claim, the court may consider the complaint, together

2

with any documents attached as exhibits or incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1998).

The court may also consider documents that, although not mentioned in the complaint or specifically incorporated by reference, are "integral" to the complaint. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)(citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  In *Chambers*, the Second Circuit noted that the harm from considering material outside the complaint is the lack of notice that the material may be considered. *Id.*  However, where there is actual notice by the opposing party of all the information in the movant's papers, such as where the plaintiff has relied upon the documents in question in framing the complaint, the necessity to convert a motion to dismiss to one for summary judgment is dissipated. *Id.*  Thus, when the plaintiff has relied upon the terms and effect of the document in framing the complaint, the document will be considered "integral" to the complaint and may be considered in a motion directed to the face of the complaint.

## 2.   <u>Facts</u>

During the time covered by the facts in this amended complaint, plaintiff was housed in the Infirmary of Coxsackie Correctional Facility, referred to as the Regional Medical Unit (RMU), due to his multiple medical conditions.  The amended complaint is a rambling discussion relating many instances of alleged misconduct by defendants over many months.  Plaintiff has named eighteen defendants in his amended complaint. (Dkt. No. 26).  Ten of the defendants are employees of the Department of Correctional Services (DOCS), assigned to Coxsackie Correctional Facility.  The

DOCS defendants are: Corrections Officer (CO) R. Tierney; CO Gransbury; CO Schauer[1]; CO Pambianchi[2]; Thomas Eagen, Director of the Inmate Grievance Program; CO Sweet; Lieutenant Perez; Captain Dirie (hearing officer); Gary Filion, Superintendent of Coxsackie; and Donald Selsky[3], Director of Special Housing/Inmate Disciplinary Programs.

The other eight named[4] defendants are employees of Correctional Medical Services, an independent contractor providing medical services to inmates at

---

[1] Plaintiff spelled this defendant's name "Schuer" in the caption of the amended complaint. The proper spelling is "Schauer", and the court will refer to this defendant with the proper spelling of his name.

[2] Plaintiff spelled this defendant's name "Pambiachi".

[3] Plaintiff spelled this defendant's name "Selskie".

[4] Plaintiff has named a "John Doe" defendant. Plaintiff has not identified this defendant, and therefore, he is not a part of this action at this time.

Coxsackie.[5]  These medical defendants are: Theresa Brantley[6]; Valerie M. Memhard[7];

Julie[8] Suarez; Elizabeth J. Fielder; Nurse S. Mercer[9]; Grace M. Mayforth[10]; Emma

Roth; and Peggy Broke.[11]

Plaintiff states that he resides in the RMU because of his multiple medical

impairments, including some paralysis resulting from a stroke; reflux disease;

prostatic disease; anemia; and diabetes. AC ¶ 25.  Plaintiff also alleges various other

ailments in his "medical history." *Id.*  Throughout the rest of the amended complaint,

plaintiff relates instances in which he had contact with defendants and in some

---

[5] The court notes that defense counsel has not properly spelled her clients' names, and has not properly identified what positions they hold at Coxsackie.  In fact, some of the individuals are listed as physicians on the title page of the memorandum of law, but are apparently nurses (defendant Mercer).  The court, however, by examining the acknowledgments of service has determined the correct spelling of the defendants' names, and in cases where the defendant herself indicated what position she held, the court has been able to determine whether the individual is a nurse or a physician.  For the defendants who did not identify themselves specifically as holding a certain position, this court cannot make any determination.  Although plaintiff has attempted to identify the defendants by their positions in the amended complaint, it appears that he has made some errors in identification, and thus, the court will not rely exclusively on plaintiff's recitation.

[6] Plaintiff spelled this defendant's name Brantly.  The court would point out that defendant Brantley was never served in this action.  The summons was returned unexecuted with a notation that Theresa Brantley was no longer employed by Correctional Medical Services at Coxsackie. (Dkt. No. 46).  However, it appears that defense counsel has responded on defendant Brantley's behalf, and based on this court's findings with respect to the merits of plaintiff's medical care, the court will not discuss the lack of service.

[7] Plaintiff spelled this defendant's name "Manharm."

[8] Plaintiff spelled this defendant's first name "July."

[9] Plaintiff spelled this defendant's name "Mercis."

[10] Plaintiff spelled this defendant's name "Mayforths."

[11] Defendant Broke has not been served for the same reason as defendant Brantley. (Dkt. No. 46).

instances claims that defendants harassed him or falsely accused plaintiff of some misbehavior. Plaintiff also alleges that when he was charged with misbehavior on June 22, 2003, defendant Dirie found plaintiff guilty notwithstanding insufficient evidence. Plaintiff may also be attempting to allege deliberate indifference to his serious medical needs and one instance of excessive force. Plaintiff also alleges that he was denied access to courts and that defendants retaliated against plaintiff for filing grievances and a lawsuit.

The amended complaint is difficult to understand. In their motions to dismiss, defense counsel have listed each defendant and stated the facts alleged against each. For clarity, the court will do the same.

### 1.    Defendant CO Tierney (DOCS)

This defendant is mentioned in paragraphs 26-30 of the amended complaint. Plaintiff alleges that on June 13, 2003, plaintiff was going to the yard in his wheelchair and moved a chair that was blocking a doorway. AC ¶ 26. Plaintiff claims that defendant Tierney approached plaintiff and asked him "in a stressful conditions [sic]" why he moved the chair. Plaintiff states that defendant Tierney told plaintiff to go back to his room, but that when plaintiff kept going toward the yard, Tierney came after plaintiff and began kicking his wheelchair and threatening to kill plaintiff. AC ¶ 27. Plaintiff states that other defendants (Brantley, Sweet, Memhard) witnessed this conduct. AC ¶¶ 27-28.

Plaintiff states that the next day he was issued a misbehavior report for refusing a direct order. AC ¶ 28. Plaintiff states that he filed a grievance against defendant

Tierney based upon his conduct, and that almost immediately thereafter, defendant Tierney harassed plaintiff by telling him to "get out of his face" on August 28, 2003. AC ¶ 29.  Plaintiff alleges additional harassment by defendant Tierney on September 1, 2003. AC ¶ 30.  Plaintiff claims that he gave defendant Tierney two envelopes to mail, but that plaintiff observed defendant Tierney smiling before he put the mail in the "box." *Id.*  Plaintiff states that he never received a response from those two grievances. *Id.*

### 2.    Defendant Theresa Brantley (Medical)

Defendant Brantley is mentioned in paragraphs 27, 30, 31, 33, and 34.  Plaintiff alleges that defendant Brantley was one of the other defendants who observed defendant Tierney kick plaintiff's wheelchair on June 13, 2003. AC ¶ 27.  Plaintiff also alleges that defendants Brantley and Fielder were present when defendant Tierney took plaintiff's mail and smiled before placing it in the box. AC ¶ 30.  Plaintiff also claims that on June 22, 2003, defendant Brantley was giving ice to other patients, but did not stop at plaintiff's room to give him ice. AC ¶ 31.  Plaintiff states that hours later he began yelling for ice and asked defendant Brantley for ice again when she was making her rounds, but plaintiff alleges that defendant Brantley told plaintiff that she "don't gave [sic] fuck." *Id.*

As a result of this encounter with defendant Brantley, plaintiff claims that defendant Schauer wrote a false misbehavior report against plaintiff, claiming that he called defendant Brantley a "puta." AC ¶ 32.  Plaintiff alleges that defendant Brantley testified at plaintiff's disciplinary hearing that he did not call her this name, but was

still found guilty of the misbehavior. AC 33-34.

### 3.    Defendant CO Schauer (DOCS)

In addition to plaintiff's claim that defendant Schauer wrote a false misbehavior report June 22, 2003, plaintiff alleges that on September 27, 2003, defendant Schauer and defendant Roth came to plaintiff's room, and defendant Schauer took two of plaintiff's pens. AC ¶ 36.  Plaintiff claims that when he got out of bed to ask Schauer to return the pens, Schauer pushed plaintiff, and plaintiff fell to the floor. *Id.*  Plaintiff states that when he continued to ask about the pens, defendant Schauer hit plaintiff on the right shoulder with a dictionary. *Id.*  Plaintiff then alleges that defendant Roth took some of plaintiff's property out of his room, but it appears that both defendants brought the property back to plaintiff and put him back on the bed after a sergeant was notified of the incident. *Id.*

### 4.    Defendant Captain Dirie (DOCS)

Defendant Dirie was the hearing officer, who held a disciplinary hearing against plaintiff on July 8, 2003, resulting from the June 22, 2003 incident. AC ¶¶ 33-34. Plaintiff alleges that defendant Dirie found plaintiff guilty and sentenced plaintiff to 40 days of keeplock and a loss of privileges based on insufficient evidence and a false misbehavior report by defendant Schauer. AC ¶ 34.

### 5.    Defendant Selsky (DOCS)

Plaintiff alleges that he appealed the result of the disciplinary hearing to defendant Selsky. AC ¶ 35.  It appears that plaintiff's appeal requested a "time cut" or a shortening of the sentence because of plaintiff's "health and safety". *Id.*  Plaintiff

alleges that defendant Selsky denied plaintiff's appeal "without clarification." *Id.*

### 6.   Defendant Emma Roth (Medical)

Plaintiff alleges that defendant Roth was present on September 27, 2003 when defendant Schauer took plaintiff's pens. AC ¶ 36.  Defendant Roth was there to give plaintiff medications. *Id.*  Plaintiff claims that defendant Roth also took some of plaintiff's property out of his room. AC ¶ 36.  However, it appears that plaintiff also claims that she brought plaintiff's property back to him as soon as a sergeant was notified. *Id.*  She also apparently helped put plaintiff back in bed after the incident. *Id.*

Plaintiff stated that on August 21, 2003, he fell in the shower when he was attempting to get back into his wheelchair, but he states that he managed to hit an alarm. AC ¶ 38.  Plaintiff appears to state that because he was in keeplock at the time, no medical personnel could open the door without the officers present. AC ¶ 39. Plaintiff alleges that defendants Roth, Fielder, and Mercer arrived with an unnamed officer to put him back on his bed. *Id.*  Defendant Mercer placed an ice bag on his forehead due to swelling from plaintiff's fall in the shower. *Id.*

### 7.   Defendant Elizabeth J. Fielder (Medical)

Plaintiff alleges that defendant Fielder was present on September 1, 2003 when defendant Tierney mailed plaintiff's grievances. AC ¶ 30.  Defendant Fielder also arrived with defendants Mercer and Roth after the shower incident on August 21, 2003 to help put plaintiff back in bed. AC ¶ 39.

### 8.   Defendant S. Mercer, RN (Medical)

The only mention of defendant Mercer is that she arrived with defendants

Fielder and Roth after the shower incident on August 21, 2003 to help put plaintiff back in bed. AC ¶ 39.  Plaintiff also states that defendant Mercer placed ice on plaintiff's forehead. *Id.*

### 9.    Defendant Pambianchi (DOCS)

Plaintiff alleges that on October 18, 2003, defendant Pambianchi and an unidentified nurse entered plaintiff's room to bring him his dinner. AC ¶ 41.  Plaintiff claims that after they left the room, defendant Pambianchi came back and turned on and off plaintiff's lights, "disturbing his moment of silence." *Id.*  Plaintiff alleges that on October 19, 2003, defendant Pambianchi came into plaintiff's room with defendant Peggy Broke to give plaintiff his dinner. AC ¶ 42.  Plaintiff alleges that defendant Pambianchi called plaintiff "# 380," and when plaintiff told Pambianchi that this was not his name and to leave the room, defendant Pambianchi allegedly threatened to kick plaintiff in the face. *Id.*

Plaintiff claims that on October 29, 2003, defendant Pambianchi came into plaintiff's room with defendant Mayforth. AC ¶ 42.  Plaintiff states after he told defendant Mayforth that she was late with his medication, defendant Mayforth told plaintiff "in a stressful condition" to take his medication, and defendant Pambianchi told plaintiff to take his "fucking meds." *Id.*  Plaintiff then told the defendants to leave his room, and defendant Pambianchi took a container of "nitrition [sic]" and threw it over plaintiff's head and against the wall, making a mess. *Id.*

Plaintiff states that he reported this alleged conduct to a sergeant, and the next day, plaintiff was served with a misbehavior report "in order to retaliate" against

plaintiff for filing a lawsuit. AC ¶¶ 44-45.  Plaintiff alleges that as a result of these incidents, he filed two grievances, one regarding the October 29, 2003 incident and one regarding the alleged retaliation. AC ¶ 45.

### 10.    Defendant Grace M. Mayforth (Medical)

The only mention of defendant Mayforth is that she told plaintiff on October 29, 2003 to take his medications. AC ¶ 43.  Plaintiff alleges, however, that this was done in a "stressful condition." *Id.*

### 11.    Defendant Thomas G. Eagen (DOCS)

Defendant Eagen is identified by plaintiff as the Director of the Inmate Grievance Program. AC ¶ 12.  Plaintiff alleges that defendant Eagen returned some grievances to plaintiff without responding to the merits. AC ¶ 46.

### 12.    Defendant K. Sweet (DOCS)

Plaintiff alleges that defendant Sweet was present to witness defendant Tierney kick plaintiff's wheelchair on June 13, 2003. AC ¶ 28.  Plaintiff also claims that on November 12, 2003, defendant Sweet came to plaintiff's room and told him to go to a hearing with defendant Dirie. AC ¶ 47.  Plaintiff stated that he told defendant Sweet that plaintiff was tired and in pain and that he could not walk because defendant Suarez had taken his wheelchair for no reason. *Id.*  Plaintiff claims that defendant Sweet rushed plaintiff. *Id.*

Plaintiff states that even though he tried to explain the situation to defendant Sweet, he persisted in rushing him and forcing plaintiff into "stressful conditions" without concern for plaintiff's health. AC ¶ 48.  Defendant Sweet also pointed his

finger in plaintiff's face, harassed, and threatened plaintiff. *Id.*

### 13.    Defendant Peggy Broke

Plaintiff alleges that defendant Broke was with defendant Pambianchi when he called plaintiff # 380 and later threatened to kick plaintiff in the face. AC ¶ 42. Plaintiff alleges that on January 25, 2004, defendant Broke came into plaintiff's room to bring him dinner, but only brought him one container of "resource nitriction [sic]", when he was supposed to have two containers. AC ¶ 52.  Plaintiff claims that he later pushed the "alarm switch", and defendant Broke came back to plaintiff's room with an unidentified guard. *Id.*  Plaintiff states that defendant Broke had the other container with her, but that she and the guard began to harass plaintiff, and defendant Broke ultimately opened the container and threw the contents in the toilet. AC ¶ 53.

Plaintiff states that he wrote a letter to defendant Broke, explaining that plaintiff was not an animal, but that he did not want to write a grievance against defendant Broke. AC ¶ 54.  Plaintiff claims, however, that on January 26, 2004, defendant Broke only again brought one container of "resource" at 5:00 p.m. *Id.*  Plaintiff states that he pushed the alarm, but there was no response. *Id.*  Plaintiff claims that when the nurse came to give plaintiff his medications at 9:00 p.m., plaintiff asked for the resource, but the unidentified nurse told him that it was not her job. *Id.*  Plaintiff alleges that on February 13, 2004, he wrote a letter to the head nurse complaining about defendant Broke's actions, and that later on February 17, 2004, he filed a grievance against defendant Broke. AC ¶ 55.

### 14.     Defendant Julie Suarez (Medical)

Plaintiff alleges that defendant Gransbury took plaintiff to be examined by defendant Suarez on June 13, 2003 after defendant Tierney allegedly kicked plaintiff's wheelchair. AC ¶ 28.  Plaintiff claims that he did not have his wheelchair on November 12, 2003 when defendant Sweet came to take plaintiff to a hearing because defendant Suarez took the wheelchair away for no reason. AC ¶ 47.

### 15.     Defendant Gransbury (DOCS)

The only thing that plaintiff alleges about defendant Gransbury is that he took plaintiff to be examined by Julie Suarez on June 13, 2003 after defendant Tierney allegedly kicked plaintiff's wheelchair. AC ¶ 28.

### 16.     Defendant Valerie M. Memhard (Medical)

Plaintiff alleges only that defendant Memhard was present in the corridor on June 13, 2003 when defendant Tierney kicked plaintiff's wheelchair. AC ¶ 28.

### 17.     Defendant Perez (DOCS)

Defendant Perez is identified as a corrections lieutenant.  Plaintiff mentions defendant Perez *only* in the caption of the amended complaint and in the section where plaintiff is simply identifying the defendants, but there are no factual claims against this defendant.

### 18.     Defendant Gary Filion (DOCS)

Defendant Filion is identified as the Superintendent of Coxsackie. AC ¶ 22. However, plaintiff makes no factual allegations against this defendant.  He is not mentioned in the textual portion of the complaint.

### 19.    Miscellaneous Claims with No Defendants Named

The amended complaint contains some miscellaneous claims that do not appear to be directed at any of the named defendants. AC ¶¶ 49-51.  Plaintiff claims that he filed a grievance on December 9, 2003, complaining about insects in his room. AC ¶ 49.  Plaintiff claims that an individual named Mrs. Monillo (not named as a defendant) told plaintiff that he was not the first one to complain about this problem. *Id.*  Plaintiff alleges that there was no response to his grievance. *Id.*

Plaintiff also alleges that on August 5, 2003, he received an order from the "courts", telling plaintiff to file an amended complaint, but plaintiff alleges that he could not get legal materials from an unidentified officer. AC ¶ 50.  Plaintiff appears to allege that he obtained an extension of time from the court. AC ¶ 51 Plaintiff claims that he then had trouble writing his request for access to the law library. *Id.*  Plaintiff states that he was told to add certain information to his next request, and plaintiff filed a grievance. *Id.*  None of the named defendants are mentioned in these three paragraphs, although it appears that plaintiff is attempting to allege a denial of access to courts.

In the last three paragraphs of the amended complaint, plaintiff lists his constitutional claims. AC ¶¶ 56-58.  Plaintiff raises claims of Due Process (14th Amendment); equal protection (14th Amendment); Deliberate Indifference/Cruel and Unusual Punishment (8th/14th Amendment); Access to Courts (6th/14th Amendments); and Freedom of Speech (1st/14th Amendments).

**3.    Personal Involvement**

It is well-settled that in order to be held liable for damages in a section 1983 action a defendant must have been personally involved in the alleged violation. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.), *cert. denied*, 434 U.S. 1087 (1978).  The doctrine of respondeat superior is inapplicable to section 1983 claims. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973).

In this case, plaintiff makes absolutely no claims against defendants Perez and Filion.  These defendants are mentioned only in the caption of the complaint and in the section in which plaintiff identifies defendants.  However, these two defendants appear to have had no contact with plaintiff at all in relation to the facts stated in the amended complaint.  Thus, the complaint may be dismissed as against these two defendants for lack of personal involvement.

**4.    Due Process**

The court must first note that it is very difficult to determine what claims plaintiff is making against which defendant.  As stated above, the complaint is a rambling recitation of events that happened on different days involving different people over a series of many months.  At the end of this recitation, plaintiff lists several constitutional rights that he believes were violated based on the previous recitation without identifying which rights were violated by which defendant at which time.  Thus, defendants and the court have attempted to match the possible violations with the recitation of the facts.

15

## A.  Disciplinary Hearing of July 8, 2003

In order to begin a due process analysis, the court must determine, *inter alia*, that plaintiff had a protected liberty interest in remaining free from the confinement that he challenges. *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996).  In *Sandin*, the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484.

The Second Circuit has *indicated* that whether a deprivation is atypical and significant involves fact finding.  *See Frasier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)("[t]he extensive fact-finding of the district court permits us to measure Frasier's SHU claim by the standard of *Sandin*); *Samuels v. Mockry*, 77 F.3d 34, 38 (2d Cir. 1996)(assessment as to whether inmate had a protected liberty interest may require fact finding).  The Court in *Sandin* determined that the inmate's discipline in segregated confinement for ***30 days*** did ***not*** present the type of atypical, significant deprivation in which the state might create a liberty interest.  *Id.*

The Second Circuit has discussed the duration element of the *Sandin* analysis. *Colon v. Howard*, 215 F.3d 227 (2d Cir. 2000).  In *Colon*, the court discussed whether it was appropriate to have a "bright line" rule regarding the maximum length of confinement in the Special Housing Unit (SHU) before a liberty interest might be

created. *Id.*  The court concluded that 305 days in SHU would meet the standard. *Id.* at

231.  Although Judge Newman believed that the court should articulate a bright line

rule, holding that any SHU confinement less than 180 days would not create a liberty

interest, the panel disagreed. *Id.* at 234.  The court also noted that the longest

confinement in SHU that did ***not*** meet the atypical requirement was ***101 days***. *Id.*  at

231 (citing *Sealey v. Giltner*, 197 F.3d 578, 589-90(2d Cir. 1999)).

In this case, plaintiff was issued a misbehavior report by defendant Schauer on

June 22, 2003 after plaintiff refused to stop yelling at defendant Brantley and

allegedly called her a prostitute in Spanish. AC ¶¶31, 33.[12]  Plaintiff claims that

defendant Dirie was the hearing officer and found plaintiff guilty of the misbehavior

even though defendant Brantley testified that plaintiff did not call her a prostitute.

Plaintiff received a penalty of 40 days of keeplock, together with a loss of privileges.

Based on the facts stated in plaintiff's complaint, this court finds that plaintiff

did not have a liberty interest in remaining free of the confinement to which he was

subjected.  Keeplock involves confinement in one's own room or cell and does not

involve a transfer to a more restrictive part of the institution.  Additionally, plaintiff

was already confined to a room in the medical unit,[13] and there is no indication that the

additional deprivation caused by the guilty finding was either atypical or significant.

Thus, plaintiff had no liberty interest and therefore, his due process rights were not

---

[12] Plaintiff has omitted a paragraph 32 in his amended complaint.

[13] In the amended complaint, plaintiff also states that he was already in keeplock and had been so since June 13, 2003. AC ¶ 31.  Plaintiff does not explain why he was in keeplock, and it is unclear how much longer plaintiff would have been in keeplock if not for this incident.

violated.[14]

Plaintiff does allege that defendant Schauer filed a false misbehavior report that accused plaintiff of calling defendant Brantley a prostitute. Plaintiff claims he did not do this. The law is clear that there is **no constitutional violation** caused by the issuance of a false misbehavior report alone. *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988). Thus, any due process claims may be dismissed as against defendants Dirie, Schauer, and Brantley. Since this is the only claim against defendant Dirie, the entire amended complaint may be dismissed as against this defendant. Any due process claims may be dismissed as against defendants Schauer and Brantley in connection with the events leading up to and including the July 8, 2003 disciplinary hearing.

Plaintiff's only claim against defendant Selsky is that he refused to reduce plaintiff's sentence on appeal. Since there was no due process violation at the hearing,

---

[14] The DOCS defendants have submitted a transcript of the disciplinary hearing. Kerwin Aff. Ex. B. Although this is a motion to dismiss, as defendants point out, the testimony of defendant Brantley at the disciplinary hearing was "integral" to plaintiff's claim that the evidence was insufficient to convict him of the misbehavior. Thus, the transcript of the disciplinary hearing can be said to have been "incorporated" into the complaint, and the court would have been able to consider it without converting the motion to one for summary judgment. In any event, a review of the transcript of the disciplinary hearing shows that plaintiff's recitation of the facts is incorrect. Plaintiff was charged with three violations: an unhygienic act of spitting, creating a disturbance, and threats to staff. Kerwin Aff. Ex. B. Defendant Brantley testified that she could not remember what names plaintiff had called her. *Id.* at 7. In fact, plaintiff was only found **not guilty of the threats**, but only found guilty of spitting (a charge that he admitted) and creating a disturbance (plaintiff admits in the amended complaint that he began "yelling" for ice). Thus, there was sufficient evidence to find plaintiff guilty of the charged for which he was ultimately held responsible. *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985)(the hearing disposition must be supported by "some" or "a modicum" of evidence). Plaintiff's admissions and the testimony of Nurse Brantley are sufficient to find plaintiff guilty. Thus, regardless of the lack of a liberty interest, plaintiff suffered no due process violation.

any due process claims relating to the appeal may also be dismissed.  Thus, the entire complaint may be dismissed as against defendant Selsky.  To the extent that plaintiff states that defendant Selsky ignored plaintiff's health and safety in refusing to reduce the sentence, this court finds the claim to be completely conclusory.  The court would point out that plaintiff was keeplocked in the medical unit.  Thus, it is completely unclear, and plaintiff does not specify why his health or safety would have been jeopardized by defendant Selsky's refusal to shorten the sentence.

**B.  Grievance Procedure**

Plaintiff seems to claim that many of his grievances were not answered and that defendant Eagen sent two grievances back to plaintiff for some unknown reason.  AC ¶ 46.  To the extent that plaintiff challenges the grievance procedure or defendant Eagen's alleged rejection of plaintiff's grievances, plaintiff states no constitutional claim.  Courts have consistently held that because grievances procedures are undertaken voluntarily by New York and other states, they are ***not constitutionally required***.  *See Ramos v. Hanslmaier*, 96 Civ. 744, 1997 U.S. Dist. LEXIS 6082, *6-7 (S.D.N.Y. Feb. 19, 1997)(multiple citations omitted).  *See also Bullock v. Horn,* CV-99-1402, 2000 U.S. Dist. LEXIS 21573, *22-23 (M.D. Pa. 2000)(plaintiff claimed improper refusal to process grievance); *Hoover v. Watson*, 886 F. Supp. 410, 418-19 (D. Del.), *aff'd*, 74 F.3d 1226 (3d Cir. 1995); *Muhammad v. McMickens*, 86 Civ. 7376, 1988 U.S. Dist. LEXIS 552, *8-9 (S.D.N.Y. Jan. 25, 1988).  Because the grievance procedures are not constitutionally required, a state's violation of those procedures or its failure to enforce them does not give rise to a claim under section 1983. *Id.*

19

Thus, any due process claim may be dismissed as against defendant Eagen. Since this is the only mention of defendant Eagen in the amended complaint, the entire complaint may be dismissed as against this defendant.

### C.  Property Rights

Plaintiff also claims that on September 27, 2003, defendant Schauer took plaintiff's pens, before pushing him down and hitting him with a dictionary. AC ¶¶ 36-37.  Plaintiff also claims that at the same time, defendant Roth took plaintiff's property out of the room, but apparently brought it back shortly thereafter.  Plaintiff would not state a due process claim even if the defendants actually deprived plaintiff of some of his personal property.

Even if the defendants had intentionally caused the loss or destruction of plaintiff's property, the deprivation of property, whether intentional or unintentional, without more, is not actionable under section 1983 as long as the state has an adequate post deprivation procedure available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). New York provides an adequate post-deprivation remedy in the Court of Claims with respect to property claims by prison inmates. *See Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996); *Love v. Coughlin*, 714 F.2d 207, 209 (2d Cir. 1983); *see also* N.Y. CT. CL. ACT § 10(6) (McKinney 1998).

Thus, even assuming that defendants Schauer and Roth did take some of plaintiff's property, there would be no due process violation as a result, and any due process claims relating to plaintiff's property may be dismissed as against these two defendants.

**5.**    **Equal Protection**

Although plaintiff mentions equal protection in the last part of the amended complaint, plaintiff fails to allege how he was treated differently than any similarly situated individuals.  There is no indication against which defendant he might be attempting to raise such a claim.  Thus, any equal protection claims may be dismissed against all defendants.

**6.**    **Cruel and Unusual Punishment/Medical Care (8th & 14th Amendments)**

**A.  Punishment**

The Eighth Amendment prohibits cruel and unusual punishments, including punishments that involve the unnecessary and wanton infliction of pain. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  When the use of excessive force is alleged, the court must determine whether the force "was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitely v. Albers*, 475 U.S. 312, 320-21 (1986)(quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973)).  In order to meet the constitutional standard for excessive force, the defendants' conduct must be "'inconsistent with the contemporary standards of decency' and 'repugnant to the conscience of mankind.'"*Whitely*, 475 U.S. at 327.

Minor uses of physical force do not reach the constitutional level as long as the force used is not "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).  However, the court must determine the need for the force, the relationship between the need and the amount of force used, the extent of the injury

suffered, the extent of the threat to the safety of staff and inmates, and any efforts made to temper the severity of a forceful response. *Whitely*, 475 U.S. at 321. The absence of serious injury may be relevant to the inquiry, but does not end it. *See Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)(citing *Hudson*, 503 U.S. at 7).

However, it is also well settled that ***verbal harassment*** itself does not rise to the level of a constitutional violation. Verbal abuse, vulgarity, and even threats are insufficient to rise to the level of constitutional violations. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996)(threats or verbal harassment without injury, "although indefensible and unprofessional," do not rise to the level of constitutional violations).

Most of what plaintiff alleges in this case amounts to verbal abuse and harassment. Plaintiff alleges that on June 13, 2003, defendant Tierney kicked plaintiff's wheelchair and threatened to "kill" plaintiff. Even assuming that these allegations are true, the kicking of plaintiff's wheelchair may have caused more pain to defendant Tierney than to plaintiff. Plaintiff does not allege any injury as the result of these actions. The court also notes that plaintiff alleges that defendant Tierney filed a misbehavior report against plaintiff for disobeying a direct order, however, it is clear from plaintiff's own amended complaint that he did disobey defendant Tierney's order to return to plaintiff's room. AC ¶ 27. Plaintiff specifically states that after Tierney told plaintiff to go back to his room, plaintiff kept going to the yard. *Id.* Thus, plaintiff admits that he engaged in the conduct for which he was given a misbehavior report, and this action by defendant Tierney did not amount to harassment of plaintiff.

22

Plaintiff also alleges that plaintiff filed a grievance against defendant Tierney, and that on August 28, 2003 (more than two months after the wheelchair incident) defendant Tierney retaliated against plaintiff by telling him to "get out of Tierney's face." AC ¶ 29.  Certainly telling someone to get out of one's face is not under any stretch of the imagination an Eighth Amendment violation.  It is true, however, that any action taken by defendant in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).[15]

There is absolutely no connection stated between the incident on June 13, 2003 and defendant telling plaintiff to get out of his face in August.  Plaintiff begins

---

[15] The court would note that *Dawes* did not create a "heightened pleading standard", and to the extent that it did create such a standard, the Second Circuit held that *Dawes* was inconsistent with *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). *See Phelps v. Capnolas*, 308 F.3d 180, 187 (2d Cir. 2002).

paragraph 30 of the amended complaint by stating that he was harassed by defendants after he filed a grievance.  Plaintiff does not specify to which grievance he is referring. Plaintiff claims that on September 1, 2003, when defendants Brantley, Fielder, and Tierney came into plaintiff's room to bring him breakfast, he gave two envelopes to defendant Tierney to mail. AC ¶ 30.  The only fact that plaintiff states is that defendant Tierney smiled as he placed the envelopes in the mailbox, and that plaintiff thereafter did not receive a response to the grievances.  Plaintiff claims that he watched defendant Tierney drop the envelopes in the box, so it is unclear how defendant Tierney would have been responsible for a failure of plaintiff to receive a response to his grievance.  Thus, this statement does not rise to the level of a constitutional violation.  Since these are the only claims made against defendant Tierney, the entire complaint may be dismissed as against this defendant.

The court must point out that although defendants Brantley and Fielder are mentioned in paragraph 30 of the complaint, plaintiff only alleges that they were present to bring him breakfast.  It is unclear whether he is attempting to make any claim against them, but there is none stated.

Defendant Pambianchi is also alleged to have harassed plaintiff. AC ¶¶ 41-43. Plaintiff claims that on October 18, 2003, defendant Pambianchi turned plaintiff's lights on and off and disturbed his moment of silence. AC ¶ 41.  On October 19, 2003, defendant Pambianchi called plaintiff a number (# 308) and threatened to kick him in the face. AC ¶ 42.  On October 29, 2003, defendant Pambianchi allegedly told plaintiff to take his fucking medication and then threw a can of nutritional supplement against

the wall.  Even assuming the truth of all of these statements, these actions do not rise to the level of an Eighth Amendment claim.  Thus, the complaint may be dismissed as against defendant Pambianchi.

Defendant Sweet is alleged to have rushed plaintiff and pointed a finger in his face because plaintiff did not want to attend a disciplinary hearing on November 12, 2003. AC ¶ 47-48.  Once again, verbal harassment and threats do not rise to the level of a constitutional violation.[16]

Plaintiff does allege that in the presence of defendant Roth, defendant Schauer pushed plaintiff onto the floor and hit him with a dictionary on the right shoulder while he was on the floor. AC ¶¶ 36-37.  However, plaintiff states that he was subsequently placed back on his bed and mentions no adverse effects from these alleged actions.  He does not claim that any medical care was required or that he was injured in any way.  Based only on the facts alleged by plaintiff, this court finds that he does not state a claim for an Eighth Amendment violation as against either defendant Schauer or Roth.

**B.  Medical Care**

In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A plaintiff must allege that his access to physicians for necessary medical care was

---

[16] The court will consider below whether plaintiff is attempting to state a deliberate indifference to his serious medical needs in this paragraph in addition to the verbal harassment claim.

25

unreasonably delayed or denied, or that prescribed medical treatment was not administered. *Tomarkin v. Ward*, 534 F. Supp. 1224, 1240 (S.D.N.Y. 1982) (citing *Todaro v. Ward*, 431 F. Supp. 1129, 1133 (S.D.N.Y.)), *aff'd*, 565 F.2d 48 (2d Cir. 1977).

The court would point out that disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id*. (citations omitted). An inmate does not have the right to treatment of his choice. *Id*. (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)); *Jackson v. Fair*, 846 F.2d 811, 817-18 (1st Cir. 1988) Additionally, negligence by physicians, even amounting to malpractice does not become a constitutional violation because the plaintiff is an inmate. *Estelle*, 429 U.S. at 107. *See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under section 1983.

It is unclear why many of the medical defendants have been named in this action. It appears from the amended complaint that because plaintiff was in keeplock during the relevant time periods of which he complains, a corrections officer was required to accompany medical personnel when visiting or examining the plaintiff. Thus, many of the medical defendants appear to be mentioned only because they happened to be present taking care of plaintiff when one of the corrections officers allegedly violated plaintiff's rights. Nonetheless, the court will consider all the claims

26

that could possibly be made against these defendants and any DOCS defendants who are accused of interfering with plaintiff's medical care.

In paragraph 28, plaintiff states that defendant Suarez examined him after defendant Tierney kicked plaintiff's wheelchair.  There is no violation of any kind mentioned in this paragraph.  The only other mention of defendant Suarez is in paragraph 47 where plaintiff alleges that defendant Sweet wanted plaintiff to attend a disciplinary hearing, but he refused to go because defendant Suarez had taken away his wheelchair for no reason.  Although plaintiff alleges in the same paragraph that defendant Sweet continued to insist that plaintiff attend the hearing, there is no further mention of defendant Suarez, and no indication that plaintiff suffered any injury as the result of defendant Suarez's alleged actions.

With respect to defendant Sweet, a DOCS defendant, plaintiff alleges in paragraph 47 that Sweet continued to insist that plaintiff attend the hearing, and plaintiff simply states that defendant Sweet was rushing plaintiff and pointing fingers in plaintiff's face, notwithstanding his medical condition. AC ¶¶ 47-48.  Once again, this is neither cruel and unusual punishment or a denial of proper medical care.  There is no indication that plaintiff was forced to do anything or that he was injured in any way due to this defendant's actions.

Defendants Brantley and Fielder are accused of watching defendant Tierney mail some envelopes for plaintiff. AC ¶ 30.  Defendant Brantley is accused of failing to stop at plaintiff's room and give him ice on one occasion and then telling him that she did not give a "fuck." AC ¶ 31.  No constitutional denial of medical care has been

27

stated by these actions.

Plaintiff also alleges that on August 21, 2003, he fell out of his wheelchair and hit his head after he had taken a shower. AC ¶ 38. Plaintiff alleges that defendants Fielder, Roth, and Mercer helped put plaintiff back on his bed, and defendant Mercer placed an ice pack on plaintiff's forehead for the swelling. AC ¶ 39. It is unclear to this court how any part of this paragraph states a denial of proper medical care or any other violation. Plaintiff states that after he fell, no one could hear him until he hit the alarm bell, but does not state that anyone delayed in coming to his rescue after that. He simply states that because he was keeplocked, the nurses were required to have someone accompany them when entering plaintiff's room.

Plaintiff alleges that defendant Mayforth was "late" bringing plaintiff his medications on one occasion, but that when he questioned her, she told him just to take the medications "in a stressful condition." AC ¶ 43. No constitutional violation is stated by these allegations. Plaintiff appears to be unhappy when anyone raises their voice to him, but also appears to admit that he frequently ignores orders and requests made of him, even when it comes to taking his medications.

Finally, plaintiff alleges that defendant Broke threw a bottle of nutritional supplement in the toilet when plaintiff was challenging her on whether he was entitled to one bottle of the supplement or two bottles. AC ¶¶ 52-55. Plaintiff states that defendant Broke arrived at 5:00 p.m. to bring plaintiff dinner, and she had only one bottle of the supplement. AC ¶ 52. Plaintiff implies that she should have brought two bottles because he was supposed to have "one at supper and one at bed time." *Id.*

Plaintiff claims that hours later, he rang the bell, and defendant Broke returned with the second bottle of supplement, but then started to harass plaintiff and ended up throwing the contents of the bottle in the toilet. AC ¶ 53.

Plaintiff alleges that on January 26, 2003, defendant Broke again brought only one bottle of the nutritional supplement at dinner time, and when plaintiff pushed the bell to get her to come back into the room, there was no answer. AC ¶ 54. Later when he asked the night nurse who came at 9:00 p.m. to give plaintiff his medications, she told him it was not her job to bring him the supplement. AC ¶ 54.

It appears that plaintiff was having a disagreement over how many bottles of nutritional supplement he should have at the same time. Plaintiff states himself that he was supposed to have one at dinner and one later. It would not be unusual that defendant Broke was only supposed to bring plaintiff the bottle that he was prescribed at dinner, and then another nurse would be responsible for bringing him the bottle that he was supposed to drink at bed time. As the amended complaint is written, there is no Eighth Amendment claims stated against defendant Broke, regardless of the fact that on one occasion she may have gotten upset with plaintiff and thrown the contents of the bottle into the toilet.[17]

Thus, this court finds that plaintiff has stated no claim for denial of or delay of medical care by any of the medical defendants. As stated above, plaintiff states no other claims as against these defendants even if they were present at a time when

---

[17] This court is in no way finding that this action occurred. It is only being assumed for purposes of the motions to dismiss.

plaintiff was making allegations of misconduct as against the DOCS defendants that were accompanying the medical personnel.  This court also finds no claims for due process, equal protection, or any other constitutional violations stated against either the DOCS defendants or the medical personnel.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that the DOCS defendants' motion to dismiss (Dkt. No. 63) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY AS AGAINST THE DOCS DEFENDANTS**, and it is further

**RECOMMENDED,** that the motion to dismiss filed on behalf of the medical defendants (Dkt. No. 66) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY AS TO ALL DEFENDANTS.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 6, 2006

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge